IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DERRECK KYLE DICKENSON,<br><br>Defendant. | Case No. 18-00340-01-CR-W-BP |

**PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

1. **The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri, represented by Timothy A. Garrison, United States Attorney, and Teresa Moore, Assistant United States Attorney, and the Department of Justice, Criminal Division, represented by Brian A. Benczkowski, Assistant Attorney General, and Mona Sahaf, Trial Attorney (otherwise referred to as "the government" or "the United States"), and the defendant, Derreck Kyle Dickenson, represented by Todd M. Schultz.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and the Department of Justice, Criminal Division, Human Rights and Special Prosecutions Section, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

2. **Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count One of the Information charging him with a violation of 18 U.S.C. § 1512(c), that is,

obstructing justice by obstructing, influencing, or impeding an official proceeding; and Count Two of the Information, charging him with a violation of 18 U.S.C. § 1001, that is, making a false statement to a federal law enforcement officer. A copy of the Information setting forth these charges is attached as Exhibit A. By entering into this plea agreement, the defendant admits that he knowingly committed these offenses and is in fact guilty of these offenses.

3. **Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

> In March 2016, Derreck Dickenson (DICKENSON), Baillie Dickenson, and their two children, B.D. and D.D., were living together in military housing in Kaiserslautern, Germany, where Derreck Dickenson served as an active duty member of the U.S. Army. Baillie Dickenson, D.D., and B.D. were Derreck Dickenson's overseas dependents at this time. In March 2016, D.D. was two months old and B.D. was sixteen months old. On or about August 22, 2017, DICKENSON separated from the U.S. Army.
>
> D.D. was born in Germany on December 18, 2015 without any known medical complications. Prior to March 12, 2016, D.D. was a healthy infant with no known birth defects or medical problems, apart from a possible dairy allergy.
>
> On March 12, 2016, DICKENSON and Baillie Dickenson drove their infant son D.D. to the emergency room at Landstuhl Regional Medical Center (LRMC) in Landstuhl, Germany. D.D. was examined by medical personnel who observed numerous bruises on D.D.'s chest, back, side and face, and blood in D.D.'s diaper. Medical imaging revealed that D.D. had suffered numerous broken bones that were in various stages of healing. Shortly thereafter, D.D. was transferred to University Hospital of the Saarland, also referred to as Homburg University Hospital (Homburg Hospital), for further treatment from its specialized trauma and pediatrics department. Further medical testing and examination of D.D. revealed that D.D. suffered a massive brain injury on the left side of his brain. X-rays showed at least seven rib fractures, including older fractures that had already begun to heal, as well as a clavicle fracture. An eye exam revealed that D.D. had suffered massive fresh retinal hemorrhages on the left side and individual hemorrhages on the right side. While being treated at Homburg Hospital, D.D. began to suffer seizures. Homburg Hospital doctors diagnosed D.D. as having suffered from "Battered Child Syndrome."
>
> Both at LRMC and Homburg Hospital, Baillie Dickenson and DICKENSON told medical personnel that they were together in a bathroom inside their home earlier on March 12, 2016, while D.D. was asleep in a bouncer chair on the ground, and B.D., his older sibling, was asleep on a sofa near D.D.'s bouncer chair. They claimed that they then heard a noise, and when Baillie Dickenson exited the bathroom to check on the children she saw

2

B.D. climbing out of D.D.'s bouncer chair with her feet on D.D.'s chest. Baillie Dickenson claimed that she then examined D.D. and later gave him a bottle. D.D. subsequently projectile vomited, causing Baillie Dickenson and DICKENSON to remove D.D.'s clothing to clean him. At that point, DICKENSON and Baillie Dickenson observed bruising on D.D.'s body and blood in his diaper, and brought D.D. to the hospital. Baillie Dickenson repeated this version of events in subsequent interviews and written statements given to law enforcement officers and personnel from the Army Criminal Investigative Division (Army CID), on or about March 13, 2016, and on or about March 22, 2016. Army CID Agents are federal law enforcement officers.

On or about March 14, 2016, DICKENSON was interviewed by Army CID Special Agents in Germany, and the interview was recorded. During his interview, and in a sworn written statement, DICKENSON stated that Baillie had never struck D.D. and never physically abused D.D. DICKENSON also stated that he and Baillie were in the bathroom together on the day that D.D. was injured, with the children asleep in another room, when they heard a loud sound, D.D. crying, and B.D. saying, "Oh D." DICKENSON stated that Baillie Dickenson then went to check on the children and told DICKENSON that B.D. was pushing herself off of D.D., who was still seated in the bouncer chair. DICKENSON stated that when he entered the living room he saw Baillie Dickenson feeding D.D. a bottle. DICKENSON then returned to the bathroom, but then Baillie Dickenson yelled that D.D. had vomited on her so DICKENSON picked up D.D. to give him a bath and when DICKENSON removed D.D.'s clothing DICKENSON saw bruising to D.D.'s left side and D.D. cried at the lightest touch. Baillie Dickenson then removed D.D.'s diaper and saw blood in his urine after which they brought D.D. to the hospital.

On or about March 22, 2016, DICKENSON underwent a polygraph examination by Army CID Special Agents in Germany. After the polygraph, DICKENSON was again interviewed by Army CID Agents about D.D.'s injuries. During this interview, DICKENSON stated that on a prior occasion in February 2016, while D.D. was sitting in his bouncer chair crying, DICKENSON saw Baillie Dickenson slap D.D. across the face with her right hand. Thereafter DICKENSON underwent another polygraph examination. During an interview thereafter, DICKENSON told Army CID Agents that on other occasions DICKENSON had seen Baillie Dickenson push down D.D.'s bouncer chair while he was seated in it and release it which caused D.D. to cry when his head jerked back and forth. DICKENSON also stated that during a family road trip to Garmisch, Germany, Baillie Dickenson became annoyed with D.D. and forcefully elbowed his car seat in an effort to make him be quiet. DICKENSON stated that he did not disclose this information previously because he feared Baillie Dickenson who was short-tempered.

On or about June 24, 2016, DICKENSON was again interviewed by Army CID in Germany after voluntarily reaching out to Army CID to give another statement, and the interview was recorded. In his interview and sworn written statement, DICKENSON stated that Baillie Dickenson was away from home on March 12, 2016, from about 8 a.m. to 3 p.m., during which time DICKENSON was alone with the children. DICKENSON also told the Army CID Agent that the statements he made after the polygraph examinations were false and that DICKENSON had never seen Baillie Dickenson hit either

3

of their two children. DICKENSON also stated that DICKENSON was the one who put both children down for naps on March 12, 2016, with B.D. on the couch and D.D. in his bouncer chair. DICKENSON also stated that he was alone in the bathroom when he heard a cry from the living room and saw B.D. standing next to D.D.'s bouncer chair, and that both of them were crying. DICKENSON stated that he believed D.D.'s injuries were caused by B.D. falling on D.D., and that D.D. also suffered from a severe vitamin D deficiency. DICKENSON also stated that Baillie Dickenson was not alone with D.D. that day.

At the time that DICKENSON made the above-described statements to Army CID Agents, DICKENSON knew that Army CID and other law enforcement authorities, including the Department of Justice, were investigating the cause of D.D.'s injuries, that Baillie Dickenson was a suspect in this investigation, and that formal charges could be brought against Baillie Dickenson or DICKENSON based on Army CID's investigation. DICKENSON also knew that his June 24th statements to Army CID Agents were false, and that they had the potential to affect Army CID's investigation into the cause of D.D.'s injuries.

When DICKENSON told Army CID Agents during interviews, and in sworn written statements, that he had never seen Baillie Dickenson strike or abuse D.D., DICKENSON knew those statements were untrue. Additionally, when DICKENSON told Army CID Agents that he had lied when he told Army CID Agents that he had seen Baillie Dickenson slap D.D. across the face, push D.D. down in his bouncer chair and then release the chair causing his head to jerk, and elbow D.D.'s car seat to make him stop crying in their car during a road trip, DICKENSON also knew that his statement was untrue. DICKENSON knowingly and intentionally made these false statements to Army CID Agents.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to Count One of the Information charging him with obstructing justice by obstructing, influencing, or

4

impeding an official proceeding, the maximum penalty the Court may impose is not more than 20 years of imprisonment, a $250,000 fine, three years of supervised release, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that Count One is a Class C felony. The defendant understands that upon his plea of guilty to Count Two of the Information charging him making a false statement to a federal law enforcement officer, the maximum penalty the Court may impose is not more than 5 years of imprisonment, a $250,000 fine, one year of supervised release, and a $100 mandatory special assessment per felony count of conviction which must be paid in full at the time of sentencing. The defendant further understands that Count Two is a Class D felony.

      **6.** **<u>Sentencing Procedures</u>.** The defendant acknowledges, understands and agrees to the following:

      a.  in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range, unless the sentence imposed is unreasonable;

      b.  in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three years on the charge of obstruction of justice, and up to one year on the charge of making a false statement to a federal law enforcement officer; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

      c.  if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two years for the charge of obstruction of justice, and up to one year for the charge of false statement to a law enforcement officer, without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years on the charge of obstruction of justice, less the term of imprisonment imposed upon revocation of the defendant's first supervised release, and one year on the charge of making a false statement to

a federal law enforcement officer, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

    d.   the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    e.   any sentence of imprisonment imposed by the Court will not allow for parole;

    f.   the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

    g.   the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

    h.   the defendant waives and abandons his interest in any property that may have been seized in connection with this case. The defendant agrees to the administrative or judicial forfeiture or the abandonment of any seized property. The defendant agrees to hold the United States and its agents and employees harmless from any claims made in connection with the seizure, forfeiture, or disposal of property connected to this case. The defendant acknowledges that the United States will dispose of any seized property, and that such disposal may include, but is not limited to, the sale, release, or destruction of the seized property. The defendant agrees to waive any and all constitutional, statutory, and equitable challenges in any manner (including direct appeal, habeas corpus, or any other means) to the seizure, forfeiture, and disposal of any property connected to this case on any grounds."

**7.**  **Government's Agreements.**   Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri and the Department of Justice, Criminal Division, Human Rights and Special Prosecutions Section as part of this plea agreement, agree not to bring any additional charges against defendant for any federal criminal offenses related to the injuries suffered by D.D. in Germany in 2016, and offenses committed during the subsequent investigation of those injuries by Army CID Agents in Germany, for which it has venue and which arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri and/or the Department of Justice, Criminal Division, Human Rights and Special Prosecutions Section have no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

**8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of

this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range, or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

   a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range, provided the sentence imposed is not unreasonable;

   b. The applicable Guidelines section for the offense of obstructing justice by obstructing, influencing, or impeding an official proceeding is U.S.S.G. § 2J1.2, which provides for a base offense level of 14;

   c. A three-level enhancement for "substantial interference with the administration of justice" applies under U.S.S.G. § 2J1.2(b)(2);

   d. The defendant has admitted his guilt and clearly accepted responsibility for his actions, and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and

permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty pleas, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

      e.    There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

      f.    The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does <u>not</u> bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

      g.    The United States agrees not to seek an upward departure from the Guidelines or a sentence outside the Guidelines range, and defendant agrees to not seek a downward departure from the Guidelines or a sentence outside the Guidelines range. The agreement by the parties to not seek a departure from the Guidelines is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range that is not unreasonable;

      h.    The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay;

      i.    The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11.     Effect of Non-Agreement on Guidelines Applications.**   The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections.   As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12.     Change in Guidelines Prior to Sentencing.**   The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option.   If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13.     Government's Reservation of Rights.**   The defendant understands that the United States expressly reserves the right in this case to:

   a.   oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

   b.   comment on the evidence supporting the charges in the Information;

   c.   oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

   d.   oppose any post-conviction motions for reduction of sentence, or other relief.

**14.     Waiver of Constitutional Rights.**   The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

a. the right to plead not guilty and to persist in a plea of not guilty;

b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

d. the right to confront and cross-examine the witnesses who testify against him;

e. the right to compel or subpoena witnesses to appear on his behalf; and

f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

**15. <u>Waiver of Appellate and Post-Conviction Rights</u>.**

a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An illegal sentence includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence

imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

16. **Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Information and all other uncharged related criminal activity.

b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $200 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The

defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing.

      h. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

      i. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17. Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18. Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the

defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

21. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written

supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Timothy A. Garrison
United States Attorney

Dated: 12/11/2018	/s/ *Teresa Moore*
Teresa Moore
Assistant United States Attorney

Brian A. Benczkowski
Assistant Attorney General, Criminal Division

Dated: 12/11/2018	*/s/ Mona Sahaf*
Mona Sahaf
Trial Attorney, Criminal Division
Human Rights and Special Prosecutions

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 12/11/2018	*/s/ Derreck Kyle Dickenson*
Derreck Kyle Dickenson
Defendant

I am defendant Derreck Dickenson's attorney.  I have fully explained to him his rights with respect to the offenses charged in the Information.  Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case.  I have carefully reviewed every part of this plea agreement with him.  To my knowledge, Derreck Dickenson's decision to enter into this plea agreement is an informed and voluntary one.


Dated: <u>12/11/2018</u>                          <u>*/s/ Todd M. Schultz*                              </u>
                                                  Todd M. Schultz
                                                  Attorney for Defendant